UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TONY A. WILSON, Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 3:10-cv-659 (VLB) |
| HOWARD EMOND, JR., Defendant. | : | February 4, 2011 |

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS [Doc. #9]**

The plaintiff, Tony A. Wilson, filed this suit *pro se* against the defendant, Howard E. Emond, Jr., in his official capacity as Deputy Director of Attorney Services of the Connecticut Bar Examining Commission (the "CBEC"). Wilson alleges that certain actions and statements made by Emond caused the CBEC to render a decision denying him admission to the Connecticut bar on character and fitness grounds. He asserts claims for violation of the First Amendment, Due Process, Equal Protection, Supremacy, Full Faith and Credit, and Privileges and Immunities clauses of the United States Constitution. Wilson seeks declaratory and injunctive relief including, *inter alia*, a declaration that the CBEC's regulations are unconstitutional, an injunction requiring Emond and the CBEC to "immediately accept and process Petitioner's second bar application without retaking the bar test, and require Mr. Emond and the CBEC to immediately conduct Petitioner's second background investigation without any additional costs or penalties," and an injunction prohibiting Emond and the CBEC from using activities he claims are protected by the First Amendment as a basis for inquiring about his character and fitness to practice law or denying his second bar application. Presently pending

before the Court is Emond's motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. #9]. For the reasons that follow, the motion is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises from the CBEC's decision to deny Wilson admission to the Connecticut bar on character and fitness grounds. Wilson alleges that the CBEC's decision was the result of false information supplied to the CBEC by Emond, who is employed by the CBEC's Administrative Office and acted as a liaison between Wilson and the CBEC.

The CBEC is charged with the duty "to provide for the examination of candidates for admission to the bar; to determine whether such candidates are qualified as to prelaw education, legal education, morals and fitness; and to recommend to the court for admission to the bar qualified candidates." Def. Exh. A, Rules of Superior Court § 2-5. In carrying out these functions, the CBEC is required to review each application for admission to the Connecticut bar and to conduct an "Assessment of Character and Fitness," which is intended to "protect[ ] the public and the system of justice" because "[t]he public interest requires that the public be secure in its expectation that those who are admitted to the bar are, at the time of admission, worthy of the trust and confidence clients may reasonably place in their attorneys." Def. Exh. B, Regs. of the CBEC, Art. VI-1. These Assessments of Character and Fitness are governed by guidelines set forth in Article VI of the CBEC Regulations, which provide that "[t]he applicant bears the burden of proving his or her good moral character and fitness to practice law by clear and convincing evidence." Id. Art. VI-3. Pursuant to the guidelines, when "the Committee believes

there are matters which indicate a lack of good moral character and/or fitness," the Committee may "hold a formal hearing on the application." Id. Art. VI-5(e)(iii).

In Wilson's case, the Committee determined that a hearing was necessary on his application for admission, and it therefore prepared written specifications and sent them to Wilson by certified mail on April 8, 2008. Def. Exh. C, Notice of Formal Hearing. The specifications set forth six matters to be inquired about at a hearing scheduled for June 13, 2008 and which, if proved, "would form the basis of the committee's determination of lack of good moral character and/or fitness." Id.; Def. Exh. B, Regs. of the CBEC, Art. VI-5(e)(iii). Those matters were:

> 1. Candor and credibility during the application process.
> 2. The applicant was discharged from the Florida Department of Children and Families for excessive absences and conduct described as hostile, confrontational and threatening, which may be conduct evidencing a disregard for the law and the rights of others.
> 3. The applicant's criminal history includes arrests for assault and battery and possession of marijuana, which may be evidence of a disregard for the law and the rights of others.
> 4. The applicant was denied admission to the bar of Florida on character and fitness grounds in 2006.
> 5. The applicant states in written documentation to the committee that his Florida bar application is "pending" which may constitute a false, misleading and incomplete disclosure on his application for admission to the bar of Connecticut in light of the fact that he was denied admission to the Florida bar on July 21, 2006.
> 6. A Delaware Department of Corrections (DDOC) job offer made to the applicant as a Probation and Parole Officer was rescinded by the DDOC as a result of a background check conducted upon the applicant.

Id.[1]

[1] The Plaintiff refers to the six "charges" set forth in the Notice of Formal Hearing in his Complaint, and therefore the Notice is incorporated by reference and the Court may consider it in deciding the instant motion to dismiss. See, e.g., Kavowras v. N.Y. Times Co., 328 F.3d 50, 57 (2d Cir. 2003) (holding that a court may take judicial notice of agency filings in the context of a motion to dismiss, particularly where the plaintiff has notice of the materials at issue).

**The CBEC held the scheduled hearing on June 13, 2008, before a panel of three members. Def. Exh. D, Transcript of CBEC Hearing, at 1. Emond, who was Wilson's primary contact during the application process, was also in attendance at the hearing. Id. Wilson failed to attend the hearing, prompting the Chairman to note that his failure to appear made it more difficult for him to sustain his burden of establishing his good moral character and fitness to practice law. Id. at 3. The Chairman further noted that "it's my understanding that [Wilson] had either an incomplete application or has not been completely candid with us in that he was denied admission in Florida." Id. at 4. Emond confirmed that understanding. Id.**

**The Chairman then moved to deny Wilson's application and opened the floor to discussion by other panel members. Id. In response, Attorney Bradley, another panel member, noted for the record that:**

> **[W]e have the decision of the bar examining committee in Florida. And it appears that there was a lengthy hearing in Florida and a very well-thought-out and lengthy decision with respect to the applicant's application in Florida. And I would suggest that we adopt the findings of the Florida bar examining committee, which found him to lack good moral character and fitness to practice law in Florida.**

**Id. at 4-5. The Chairman then amended his motion to deny Wilson's application "to include Attorney Bradley's comments concerning the Florida matter." Id. at 5. Thereafter, the panel voted unanimously to deny Wilson's application. Id. Wilson was provided notice of the panel's decision by Emond. Id.**

**The CBEC's regulations allow "[a]ny applicant who is dissatisfied with" a panel decision to, within sixty days after receiving notice of the decision, "file with the administrative director a petition for reconsideration" and have the panel's decision reconsidered by a quorum of the entire twenty-six member CBEC. Def. Exh. B., Art. VI-5(e)(v). Wilson did not seek review of the panel's decision by the full**

**CBEC. Instead, he filed three *pro se* actions challenging the CBEC's decision. In the first action, filed on July 18, 2008, Wilson brought suit *pro se* against Emond in the United States District Court for the District of Delaware. In that action, Wilson raised a variety of constitutional claims based upon the CBEC's denial of his bar application. Wilson v. Emond, 1:08-cv-00449-JJF (D. Del.), [Doc. #2]. After the district granted Wilson's request to proceed *in forma pauperis*, Emond's counsel coordinated *pro hac vice* admission in Delaware and moved to dismiss Wilson's complaint on several ground, including improper venue, improper service, lack of personal jurisdiction, and state interests favoring abstention. Id. [Doc. #7]. Rather than responding to the motion, Wilson filed a Notice of Voluntary Dismissal and withdrew his action. Id. [Doc. #11].**

**Subsequently, in late August 2008, Wilson filed a second *pro se* action, this time in Connecticut Superior Court. Wilson sought judicial review of the CBEC panel's decision based upon the same constitutional grounds asserted in the prior Delaware action. The case was subsequently dismissed on the basis of, *inter alia*, sovereign immunity and failure to exhaust administrative remedies because of Wilson's failure to seek review of the denial of his bar application by the full CBEC. Wilson v. Conn. Bar Examining Comm., No. CV084039528S, 2009 WL 2037328, at *2-3 (Conn. Super. Ct. June 15, 2009). The Connecticut Appellate Court summarily affirmed dismissal of the case on November 16, 2010. Wilson v. Conn. Bar Examining Comm., No. HHD-CV08-4039528-S (Conn. App. Ct.), [Entry No. 132.00].**

**On September 15, 2008, approximately one month after filing his action in Connecticut Superior Court, Wilson filed a third *pro se* action against Emond, again challenging the CBEC's denial of his bar application, before the United States**

**District Court for the District of Connecticut. Wilson v. Emond, No. 3:08-cv-01399 (MRK) (D. Conn.). The case was assigned to the Honorable Mark R. Kravitz. Wilson was again granted leave to proceed *in forma pauperis*. Emond subsequently moved to dismiss on various grounds, including Younger abstention and the Rooker-Feldman doctrine. Id. [Doc. #16]. Despite being directed to respond to Emond's motion to dismiss, Wilson failed to do so, and Judge Kravitz subsequently dismissed Wilson's suit on Younger abstention and absolute immunity grounds. Id. [Doc. #24]; Wilson v. Emond, No. 3:08-cv-1399 (MRK), 2009 WL 902380 (D. Conn. Apr. 1, 2009).[2] Wilson thereafter moved for reconsideration of this decision. Id. [Doc. #26]. Although Judge Kravitz agreed to consider Wilson's belated arguments, he declined to amend his initial decision dismissing the case. Id. [Doc. #28]; Wilson v. Emond, No. 3:08-cv-1399 (MRK), 2009 WL 1491511 (D. Conn. May 28, 2009). Judge Kravitz' decision was subsequently affirmed by the Second Circuit Court of Appeals, and the United States Supreme Court denied Wilson's Petition for a Writ of *Certiorari*. Wilson v. Emond, No. 09-2502-cv (L), 09-2880-cv (CON), 373 Fed. Appx. 98 (2d Cir. 2010), cert. denied, (June 28, 2010).**

---

**2 Younger abstention does not apply in this case because there is no longer a pending state proceeding, as the Connecticut Appellate Court summarily affirmed the Superior Court's dismissal of Wilson's state case on November 16, 2010. See Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003) ("Younger abstention is mandatory when (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for review of his or her federal constitutional claims."). Absolute immunity is also inapplicable here because Wilson does not seek damages against Wolf in his individual capacity. See Sundwall v. Leuba, 28 Fed. Appx. 11, 13-14 (2d Cir. 2002) ("[O]fficials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages."); Shmueli v. City of New York, 424 F.3d 231, 239 (S.D.N.Y. 2005) ("An official's entitlement to absolute immunity from a claim for damages . . . does not bar the granting of injunctive relief, or of other equitable relief.") (citations omitted).**

**Wilson filed the present action, his fourth attempt to obtain judicial review of the CBEC's denial of his bar application, on April 28, 2010. In his Complaint, he asserts numerous constitutional claims that he has already raised, or that are substantially similar to claims that he has raised, in his three prior actions. These claims include purported "general challenges" to CBEC regulations under the First Amendment and the Due Process, Equal Protection, Supremacy, and Full Faith and Credit clauses of the United States Constitution; "as applied" challenges to CBEC regulations under the same constitutional provisions based upon Emond's alleged misconduct during the CBEC hearing; and challenges to the Connecticut Superior Court's decision affirming denial of his application for admission under the Supremacy, Full Faith and Credit, and Privileges and Immunities clauses of the United States Constitution. Compl. [Doc. #2]. He seeks declaratory and injunctive relief including, *inter alia*, a declaration that the CBEC's regulations are unconstitutional, an injunction requiring Emond and the CBEC to "immediately accept and process Petitioner's second bar application without retaking the bar test, and require Mr. Emond and the CBEC to immediately conduct Petitioner's second background investigation without any additional costs or penalties," and an injunction prohibiting Emond and the CBEC from using activities he claims are protected by the First Amendment as a basis for inquiring about his character and fitness to practice law or denying his second bar application. Id. at 20-21. Emond filed the instant motion to dismiss on July 28, 2010, arguing that the case should be dismissed pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure because this Court lacks subject matter jurisdiction over Wilson's claims and under Rule 12(b)(6) of the Federal Rule of Civil Procedure because the Complaint fails to state a**

**claim on which relief may be granted. [Doc. #9]. Wilson filed an opposition to the motion on August 11, 2010. [Doc. #11]. Emond filed a reply in further support of his motion to dismiss on August 25, 2010. [Doc. #12].**

**In addition to the four actions Wilson filed against the CBEC and its employees, Wilson has asserted similar claims in at least three other federal actions arising out of the denial of his bar applications in Florida, New Jersey, and Pennsylvania on character and fitness grounds. Each of those actions has been dismissed. See Wilson v. Gavagni, No. 4:08cv361-SPM/WCS, 2009 WL 3055348 (N.D. Fla. Sept. 21, 2008) (dismissing case under the Rooker-Feldman doctrine because "Plaintiff's claims are inextricably intertwined with the Florida Supreme Court's decision to deny Plaintiff admission to the bar"); Wilson v. Jacobs, No. 08-4795 (MLC), 2009 WL 1968788 (D.N.J. July 1, 2009) (dismissing case on ripeness grounds); Wilson v. Dows, No. 1:08-CV-2219, 2009 WL 3182548 (M.D. Pa. Sept. 30, 2009) (dismissing case on the basis that "the Rooker-Feldman Doctrine bars federal court review of a state bar's decision to deny an application for admission" and because "[a]ny judicial relief remaining exists exclusively in the appellate courts of the state"). Wilson's appeals from all three of these actions were summarily dismissed. See Wilson v. Dows, 390 Fed. Appx. 174 (3d Cir. 2010) (affirming district court's judgment of dismissal on Younger abstention grounds); Wilson v. Gavagni, 09-14975-C (11th Cir. Jan. 5, 2010) (denying Wilson's request to proceed *in forma pauperis* and denying appeal as frivolous) (Def. Exh. J); Wilson v. Jacobs, 350 Fex. Appx. 614 (3rd Cir. 2009) (summarily affirming district court's order dismissing Wilson's case).**

## II. STANDARD OF REVIEW

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim are "substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d. Cir. 2003). However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). Id. In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." In re AIG Advisor Group Sec. Litig., 309 Fed. App'x. 495, 497 (2d Cir. 2009). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. DISCUSSION

### A. The Rooker-Feldman Doctrine

Emond moves to dismiss Wilson's complaint based upon the Rooker-Feldman doctrine. The Rooker-Feldman doctrine limits the subject matter of federal district courts to review claims arising out of the state judicial decision-making process. In "Rooker and Feldman . . . [the United States Supreme Court] established the clear principle that federal district courts lack jurisdiction over suits

that are, in substance, appeals from state-court judgments." Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). Within the federal system, only the United States Supreme Court has the authority to review state-court decisions. Id. at 85.

The Rooker-Feldman doctrine applies, and therefore the district court lacks subject matter jurisdiction, when the following four conditions are satisfied: (1) "the federal-court plaintiff must have lost in state court"; (2) the federal-court plaintiff must "complain[ ] of injuries caused by [a] state-court judgment"; (3) the federal-court plaintiff must "invit[e] district court review and rejection of [that] judgment"; and (4) "the state-court judgment must have been 'rendered before the district court proceedings commenced.'" Id. (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Although an exception to the Rooker-Feldman doctrine exists when a plaintiff legitimately raises a "general challenge" to the constitutionality of a particular rule or regulation, the exception does not apply when claims that are superficially framed as general challenges are in reality intended to result in the reversal of a state court decision. See Lawrence v. Welch, 531 F.3d 364, 371-72 (6th Cir. 2008).

Numerous courts have applied the Rooker-Feldman doctrine to preclude federal review of a state decision denying an applicant admission to the state bar. See, e.g., Lawrence, 531 F.3d at 369 ("federal challenges to the denial of bar applications are barred by Rooker-Feldman"); Kastner v. Tex. Bd. of Law Examiners, 278 Fed. Appx. 346, 349 (5th Cir. 2008) ("A state bar's denial of admission is a state judicial act over which a federal district court has no jurisdiction" under Rooker-Feldman); Dean v. Mozingo, 521 F. Supp. 2d 541, 547-49 (S.D. Miss. 2007) (holding

***sua sponte* that Rooker-Feldman barred claims challenging denial of admission to state bar).**

**Indeed, at least two federal district courts have already applied the Rooker-Feldman doctrine to preclude review of virtually identical claims asserted by Wilson which arose from the denial of his admission to the Florida and Pennsylvania bars. In Wilson v. Gavagni, No. No. 4:08cv361-SPM/WCS, 2009 WL 3055348, at *1-3 (N.D. Fla. Sept. 21, 2009), Wilson raised several purported "general challenges" to the constitutionality of the Florida bar admission rules as well as various "as applied" constitutional challenges based on the conduct of the individual defendants in procuring denial of Wilson's bar application. The Magistrate Judge recommended that the case be dismissed on Rooker-Feldman grounds. In so holding, the Magistrate Judge noted that, despite Wilson's self-serving statements to the contrary, all of his "general challenge" claims were properly characterized as "directly challeng[ing] the adjudicative decision of the Florida Supreme Court" denying his bar application because none of his factual allegations focused on the language of the rules that Wilson claimed to be unconstitutional. Id. at *5. The Magistrate Judge further stated that, given that "the harm Plaintiff suffered did not accrue until the actions of the Defendants combined with the ruling of the Florida Supreme Court to deny admission to the Florida bar," Wilson's "general challenges" to the Florida bar admission rules did not preclude application of the Rooker-Feldman doctrine because such challenges were "inextricably intertwined" with the state court judgment and could not "succeed without finding that the Florida Supreme Court wrongly decided Plaintiff's application for admission." Id. The district court adopted the Magistrate Judge's recommendations in their entirety. Id.**

**at *1. Wilson's appeal of that decision was dismissed as frivolous. Wilson v. Gavagni, 09-14975-C (11th Cir. Jan. 5, 2010) (Def. Exh. J).**

**Similarly, in Wilson v. Dows, No. 1:08-2219, 2009 WL 3182548, at *2-3 (M.D. Pa. June 8, 2009), Wilson raised purported "general challenges" to the constitutionality of Pennsylvania's bar admission rules and alleged that the Pennsylvania Board of Law Examiners had improperly relied on the CBEC and Florida Board of Bar Examiner (the "FBBE") decisions in denying his application to the Pennsylvania bar. The Magistrate Judge recommended that Wilson's action be dismissed on Rooker-Feldman grounds because, although he had superficially framed his claims as "general challenges" to the constitutionality of Pennsylvania's bar admission rules, "he [was], in essence, challenging the decision to deny him admission to the Pennsylvania bar" given that his factual allegations focused on the conduct of the defendants in his admission proceedings rather than on the language of the rules themselves. Id. at *3. As in the Florida action, the Magistrate Judge noted that a "federal claim is 'inextricably intertwined' with an issue adjudicated by state court, such that the Rooker-Feldman doctrine applies . . . where: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief; or (2) the federal court must take action that would negate the state court's judgment." Id. at *4 (citing In re Knapper, 407 F.3d 573 (3d Cir. 2005)). Because Wilson's alleged injuries resulted from "the actions of the Board in denying him admission," the Magistrate Judge concluded that Wilson's action was barred by the Rooker-Feldman doctrine because "the plaintiff cannot succeed on his claims without a finding by this court that his application for admission was**

**wrongly decided." Id. The district court adopted the Magistrate Judge's decision in its entirety. Id. at *1.**

**The Court finds these decisions to be powerful persuasive authority given the similarity between Wilson's claims in those cases compared to his claims here. Clearly, the "procedural" requirements of Rooker-Feldman, the first and fourth conditions noted above, apply in this case. With respect to the first condition, Wilson "lost" before both the CBEC and in the Connecticut Superior Court, both of which constitute "state proceedings" for Rooker-Feldman purposes. See Mitchell v. Fishbein, 377 F.3d 157, 166 (2d Cir. 2004); La Cava v. N.Y. State Comm'n on Judicial Conduct, 299 F. Supp. 2d 176, 179 (S.D.N.Y. 2003). As to the fourth condition, both the CBEC's decision and the Connecticut Superior Court's decision were rendered well before Wilson initiated the present action.**

**Likewise, the "substantive" requirements of Rooker-Feldman, the first and conditions noted above, are also satisfied in this case. These two requirements "turn[ ] not on the similarity between a party's state-court conduct and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." McKithen v. Brown, 481 F.3d 89, 97-98 (2d Cir. 2007).**

**The injury that Wilson complains of in this case, denial of his application for admission to the Connecticut bar, was caused by the CBEC's decision and the Connecticut Superior Court's subsequent affirmance of that decision. Although Wilson conclusorily asserts that he is raising a "general challenge" to the constitutionality of the CBEC's regulations rather than a direct challenge to the**

denial of his bar application, this assertion is belied by the nature of his factual allegations and legal claims. For instance, Wilson explicitly relies on the CBEC's denial of his first bar application "as evidence of" his purported "general challenge" claims. Compl, [Doc. #2] ¶ 105. Moreover, all fifty-six of Wilson's factual allegations relate to the CBEC's conduct with regard to the denial of his first bar application and/or the propriety of the FBBE's decision, upon which the CBEC relied, without any reference at all to the actual language of the rules that Wilson claims he is challenging as facially unconstitutional. Id. ¶¶ 1-56. Finally, Wilson requests as relief an order directing Emond and the CBEC to "immediately accept and process Petitioner's second bar application without retaking the bar test, and require [Emond] and the CBEC to immediately conduct Petitioner's second background investigation without any additional costs or penalties." Id. at 20. This request reveals Wilson's intent to utilize the present action as a direct attempt to reverse the CBEC's decision and promptly grant him admission to the Connecticut bar.

In opposition to Emond's motion to dismiss, Wilson cites two Eleventh Circuit decisions in support of the proposition that "state proceedings have not ended for purposes of Rooker-Feldman when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal action . . . ." Nicholson v. Shafe, 558 F.3d 1266, 1275 (11th Cir. 2009); see also Green v. Jefferson County Comm'n, 563 F.3d 1243, 1250 (11th Cir. 2009). However, neither the United States Supreme Court nor the Second Circuit has adopted the Eleventh Circuit's rule, and several district courts within this Circuit have rejected it. See, e.g., Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340, 347 (E.D.N.Y. 2010) ("Despite Exxon-Mobil's use of the phrase 'after the state proceedings ended,' that

**decision makes clear that Rooker-Feldman prevents federal courts (other than the Supreme Court) from 'review[ing] and revers[ing] unfavorable state-court judgments.") (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005)); Aretakis v. Comm. on Prof'l Stds., No. 08 Civ. 9712 (RMB)(KNF), 2009 WL 1905077, at *6 (S.D.N.Y. July 1, 2009) (holding that Rooker-Feldman applies regardless of the pendency of an appeal from the state court challenged in federal court); Schuh v. Druckman & Sinel, LLP, No. 07 Civ. 366 (LAK)(GWG), 2008 WL 542504, at *5 (S.D.N.Y. Feb. 29, 2008) (same). As the district court in Caldwell explained, the Rooker-Feldman doctrine's core purpose "would be undermined if the doctrine is inapplicable simply because a litigant happens to be seeking state appellate review of a state-court judgment, while also seeking federal district court review of that judgment." Caldwell, 701 F. Supp. 2d at 348. Based upon this reasoning, this Court declines to follow the Eleventh Circuit's view.**

**Wilson further contends in his opposition that his claims in Count I of the complaint are not barred by the Rooker-Feldman doctrine because they represent "general challenges" to the constitutionality of the CBEC's regulations. However, as addressed above, all of Wilson's factual allegations relate to the CBEC's conduct with regard to the denial of his first bar application, including its reliance on the FBBE's denial of his application for admission to the Florida bar. Wilson's discussion in his opposition only confirms that his purported "general challenge" claims are in reality attempts to overturn the denial of his admission to the Connecticut bar. Rather than analyzing the language of the regulations he claims are facially unconstitutional, Wilson focuses his analysis on the alleged constitutional deficiencies in the actual CBEC and Connecticut Superior Court**

**decisions. Like other courts that have considered Wilson's claims, this Court holds that Wilson's purported "general challenge" claims are merely an attempt to directly challenge the validity of the CBEC's decision and the Connecticut Superior Court's subsequent affirmance of that decision.**

**Finally, Wilson argues that Count II of his complaint is not barred by the <u>Rooker-Feldman</u> doctrine because it asserts an "independent claim" based upon Emond's alleged improper conduct during the admissions process. In order to assert an "independent claim" that is not barred by <u>Rooker-Feldman</u>, a plaintiff must assert "a claim based on an injury that was not <u>caused</u> by the state-court judgment." <u>McKithen v. Brown</u>, 481 F.3d 89, 98 (2d Cir. 2007). The crucial inquiry in this analysis is whether "the state-court judgment [is] the source of the injury." <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 87 (2d Cir. 2005). Improper conduct by a third party, standing alone, is insufficient to state an "independent claim" for <u>Rooker-Feldman</u> purposes if that third party's conduct did not cause an injury that was separate and distinct from that caused by the state court judgment itself. <u>See</u> <u>Buford v. Palisades Collection, LLC</u>, 552 F. Supp. 2d 800, 805 (N.D. Ill. 2008). In this case, the only injury that Wilson complains of was the denial of his bar application. However, it was the CBEC's decision, rather than Emond's alleged conduct, that ultimately caused the denial of his admission to the bar. It is undisputed that only the CBEC, and not Emond himself, had the authority to approve or deny Wilson's bar application. Therefore, Wilson has not stated an "independent claim." <u>See</u> <u>Rotering v. Amodeo</u>, No. 07-4357-cv, 2009 WL 579138, at *2 (2d Cir. Mar. 6, 2009) (holding that plaintiff failed to state an "independent claim" because, "[a]bsent denial of [plaintiff's state court action], there would have been no**

injury to [plaintiff]"); Kansas City S. Ry. Co. v. Borrowman, No. 09-3094, 2009 WL 1456726, at *3 (C.D. Ill. May 22, 2009) (stating that a claim is barred by Rooker-Feldman "if Plaintiffs would not have suffered the injury at issue 'but for' a state court's judicial judgment"). Accordingly, this Court lacks jurisdiction over Wilson's claims pursuant to the Rooker-Feldman doctrine.

## B. Eleventh Amendment Immunity

Emond also argues that Wilson's claims are barred by Eleventh Amendment Immunity. "The Eleventh Amendment prohibits the 'Judicial power of the United States' from extending to 'any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" Deposit Ins. Agency v. Superintendent of Banks, 482 F.3d 612, 617 (2d Cir. 2007) (quoting U.S. Const. Amend. XI). The Eleventh Amendment's bar generally applies to suits against state officers in their official capacities. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). However, under the Ex Parte Young doctrine, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" Deposit Ins. Agency, 482 F.3d at 618 (citations omitted).

In this case, Wilson sues Emond in his official capacity as Deputy Director of Attorney Services of the Connecticut Bar Examining Committee. The State has not waived immunity, and therefore this suit is barred by the Eleventh Amendment unless the Ex Parte Young doctrine applies. That exception does not apply to any of Wilson's claims, however, because he has not alleged "on ongoing violation of

federal law," nor does he seek "relief that is properly characterized as prospective." Id.

Rather than alleging on ongoing violation of federal law, Wilson simply alleges a discrete violation of his constitutional rights in the form of the CBEC's denial of his bar application and Emond's purported actions during the CBEC proceedings. Even assuming that such a violation occurred, the CBEC's decision has long been rendered, and therefore the violation has ended. Wilson is free to file a second bar application if he wishes, as his complaint indicates that he intends to do. However, any violation of his constitutional rights during his initial bar application process cannot be considered to be "ongoing" for Ex Parte Young purposes. See McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 Fed. Appx. 121, 123 (2d Cir. 2010) (holding that dismissal of *pro se* plaintiff's attorney grievance complaints, even if improper or unlawful, did not constitute an ongoing violation of federal law for Ex Parte Young purposes).

Moreover, despite Wilson's conclusory assertions to the contrary, he has not alleged claims seeking relief that may properly characterized as prospective rather than retrospective. As to Count I, he ultimately requests that the Court "require[ ] Mr. Emond and the CBEC to immediately accept and process Petitioner's second bar application without retaking the bar test, and require Mr. Emond and the CBEC to immediately conduct Petitioner's second background investigation without any additional costs or penalties." Compl. [Doc. #2] at 20. The relief Wilson seeks is merely a retroactive attempt to reverse the outcome of the CBEC's initial decision that is barred by the Eleventh Amendment. See Bd. of Educ. v. Schulz, 290 F.3d 476, 480 (2d Cir. 2002) ("retrospective relief [is] precluded by the Eleventh Amendment).

**As to Count II, the only relief Wilson requests is "a declaratory judgment that the Connecticut Bar Examining Committee's decision denying Petitioner's bar application was procured by Mr. Emond and the CBEC violating Petitioner's federal rights." Compl. [Doc. #2] at 21. Such relief clearly seeks a declaration regarding the constitutionality of past conduct and the validity of a decision that has already been rendered. It is therefore retrospective only and barred by the Eleventh Amendment. Accordingly, this case must also be dismissed on the basis of Eleventh Amendment immunity.**

## IV. CONCLUSION

**Based upon the above reasoning, Emond's motion to dismiss [Doc. #9] is GRANTED. The Clerk is directed to close this case.**

**IT IS SO ORDERED.**

**/s/**
**Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, CT: February 4, 2011.**